UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § § § | |
| v. | § § | CRIMINAL NO. 3:18-CR-571-B-1 |
| BLANCA HADDAD, | § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Government's Motion for Restraining Order (Doc. 157). For the reasons set forth below, the Court **GRANTS** the motion.

### I.

### BACKGROUND

On October 12, 2021, Defendant Blanca Haddad pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and was sentenced to sixty months of imprisonment and three years of supervised release. Doc. 137, J., 1–3. Additionally, the Court ordered a $100.00 special assessment and victim restitution totaling $2,464,647.00 pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"). *Id.* at 5–6. Haddad was ordered to surrender to the Bureau of Prisons ("BOP") before 2:00 P.M. on January 5, 2022. *Id.* at 2.

On January 4, 2022, the Government filed the instant motion requesting that the Court issue a restraining order preventing Haddad, her husband, or any representative/assign from diverting or concealing Haddad's property in attempt to circumvent the Court's restitution order. *See* Doc. 157, Gov't's Mot., 1. In its motion, the Government alleges the following:

[1.] Upon entry of the judgment, a federal tax-type lien arose in favor of the United States against all of Haddad's property and rights to property.

[2.] The United States perfected its lien on December 21, 2021, by filing a notice of lien in the real property records for Dallas County, Texas.

[3.] The United States sent a copy of that lien to Haddad's counsel on December 22, 2021 and advised counsel that it expected any proceeds from the sale of the Haddads' home to be applied to satisfy the restitution debt, [to which] Counsel responded indicating that it was his understanding that the Haddads were not going through with the closing.

[4.] Nonetheless, on December 23, 2021, Haddad and her spouse closed on the sale of their home in Dallas, Texas in derogation of the federal lien, and received over $1.2 million in proceeds from the sale.

[5.] Rather [than] being applied to satisfy Haddad's restitution debt, the proceeds from the sale were wired offshore to an account held by the Capital Bank of Jordan.

*Id.* ¶¶ 4–8.

The next day, Haddad failed to report to the BOP, and her whereabouts are currently unknown. Doc. 165, Gov't's Reply, 5; *see* Inmate Locator, Federal Bureau of Prisons, https://bop.gov/inmateloc/ (last visited Feb. 3, 2022) (noting that Haddad is not in BOP custody); *see also* Doc. 164, Def.'s Resp., 4 n.3 (stating counsel's difficulty "in responding to the motion since contact with . . . Haddad and [her] husband is not possible at this time").

On order of the Court, Haddad's counsel responded to the Government's motion on her behalf. *See* Doc. 159, Elec. Order (ordering Haddad to respond to the Government's motion); Doc. 161, Mot. Withdraw (filed by Haddad's counsel); 163, Elec. Order (deferring ruling on Haddad's counsel's motion to withdraw until he filed a response to the Government's Motion for Restraining Order); Doc. 164, Def.'s Resp. The Government filed a reply shortly thereafter. Doc. 165, Reply. The Court reviews the parties' arguments below.

## II.

## LEGAL STANDARD

*A.  The MVRA*

When a court orders a criminal defendant to pay restitution, the Government obtains a federal-tax-tpe lien on "all property and rights to property of [the defendant]" until the restitution order expires or is satisfied. 18 U.S.C. § 3613(c); *United States v. Loftis*, 607 F.3d 173, 179 n.7 (5th Cir. 2010) ("The [MVRA] makes a restitution order enforceable to the same extent as a tax lien."). Under the MVRA, the Government can enforce its lien by (1) using the enforcement mechanisms "provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of" Title 18; or (2) "all other available and reasonable means." 18 U.S.C. § 3664 (m)(1)(A)(i)–(ii).

"Although federal law thus creates a lien on property, it is state law that 'defines the property interests to which the lien attaches.'" *United States v. Mire*, 838 F.3d 621, 626 (5th Cir. 2016) (quoting *United States v. Elashi*, 789 F.3d 547, 548–49 (5th Cir. 2015)). In Texas, when the defendant is married, the federal lien attaches to (1) all of the defendant's separate property; (2) all of the defendant's sole-management community property; (3) all of the couple's joint-management community property (including the non-debtor's spouse's undivided one-half interest in such property); and (4) one-half of the non-debtor spouse's sole-management community property. *See Loftis*, 607 F.3d at 178–79. The lien also attaches to property belonging to corporate entities where it is shown that the entity was an "alter ego" of the defendant. *See Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 243–244 (5th Cir. 1990); *United States v. Dimeglio*, 2014 WL 1761674, at *4 (W.D. Tex. Apr. 30, 2014).

B.     *The All Writs Act*

The All Writs Act grants federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act operates "as a legislatively approved source of procedural instruments designed to achieve the rational ends of law" and vests courts with the power to issue orders as "necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).

### III.

### ANALYSIS

As introduced above, the Court ordered Haddad to pay restitution of $2,464,647.00—an amount which remains unsatisfied. *See* Doc. 137, J., 1, 5; Doc. 157, Gov't's Mot., ¶¶ 1–2. According to the Government, "Haddad and her spouse's course of action to date—selling their home without notifying the United States and immediately wiring the substantial proceeds from the sale offshore despite being on notice of the [G]overment's lien—indicate[s] that they do not intend to pay her restitution debt and will make further efforts to secret her assets away from this Court's reach." *Id.* at 5. The Government thus seeks a restraining order enjoining Haddad, her husband, and her agents/representatives from transferring, dissipating, or otherwise alienating Haddad's property. *Id.* at 1. The Government claims that the Court may issue the proposed restraining order pursuant to its authority under the All Writs Act and avers that it may do so without requiring the Government to "rigidly comply with [Federal Rule of Civil Procedure] 65's prescriptions [for injunctions and restraining orders] so long as the injunction is 'specific and definite enough to apprise those within

its scope of the conduct that is being proscribed.'"[1] *Id.* at 5 (quoting *United States v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011)).

In response, Haddad does not dispute the factual allegations set forth in the Government's motion. *See* Doc. 164, Def.'s Resp. Instead, she argues that the Government's failure to "even allege[] compliance with Rule 65" is fatal to its motion. *Id.* at 2. According to Haddad, Rule 65 applies "in all collection efforts by the [G]overnment in federal court" and the Court is bound to mandate compliance with Rule 65 in the present case by *Fla. Med. Assoc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199 (5th Cir. 1979). *Id.* at 1–2 & n.2. The Government replies that *Florida Medical Association* is distinguishable and that courts regularly issue restraining orders pursuant to the All Writs Act in order to prevent frustration of restitution orders without requiring compliance with Rule 65.[2] Doc. 165, Gov't's Reply, 3–4. Below, the Court reviews *Florida Medical Association* and finds that it does not require the Government here to comply with Rule 65's requirements. The Court then turns to the merits of the Government's motion and concludes it demonstrates sufficient cause for entry of a restraining order.

---

[1] Under Rule 65, a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1); *see Harris Cnty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Loc. No. 70*, 415 U.S. 423, 434 n.7 (1974)). Further, the movant must establish four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

[2] The Government also argues that the Court should disregard Haddad's Response because it was untimely. *See* Doc. 165, Gov't's Reply, 2. The Court does not address the timeliness of Haddad's Response because its consideration does not change the Court's ultimate disposition of the Government's Motion.

A. *Florida Medical Association Does Not Mandate the Government's Compliance With Rule 65*

*Florida Medical Association* concerned a class of physicians who sought "to enjoin publication of a list . . . identif[ying] . . . every physician in the United States who treated Medicare beneficiaries . . . and stat[ing] the amount of income he or she received from the program in that year." 601 F.2d at 201. The plaintiffs sought and received a temporary restraining order ("TRO") preventing the defendants from publishing the list. *Id.* Upon the TRO's expiration, "the district court issued an 'ancillary writ of injunction,' restraining [the defendants] from disclosing the list." *Id.* In doing so, the court relied, in relevant part, on its authority under the All Writs Act. *Id.* at 202. Specifically, the district court reasoned that failing to issue the injunction would moot the case altogether and destroy its "federal question subject matter jurisdiction to review the [defendants'] conduct." *Id.*

On appeal, the Fifth Circuit held that "the All Writs Act does not free a district court from the restraints of Rule 65." *Id.* While recognizing the district court's authority, the court emphasized that the All Writs Act "does not authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules proves inconvenient." *Id.* And "[w]hile publication of the list . . . appear[ed] to moot the controversy," the court stated, "Rule 65 provid[ed] sufficient protection for the jurisdiction of the district court." *Id.* Therefore, the Fifth Circuit vacated the district court's writ. *Id.* at 203.

Haddad insists that *Florida Medical Association* mandates the government's compliance with Rule 65 in the present case.[3] Doc. 164, Def.'s Resp., 2. "[A]lthough . . . styled as a motion for a

---

[3] Haddad also cites to *Scardelletti v. Debarr* ("*Scardelletti I*"), 265 F.3d 195 (4th Cir. 2001), *rev'd on other grounds sub nom., Devlin v. Scardelletti*, 536 U.S. 1 (2002). Doc. 164, Def.'s Resp., 2. *Scardelletti I* concerned a district court's All Writs Act injunction enjoining a party "from collaterally attacking [a] settlement [agreement] in another jurisdiction." *Scardelletti I*, 265 F.3d at 199. On appeal, the Fourth Circuit—finding that "Rule 65 applies to injunctions issued under the All Writs Act"—reversed the district court's injunction for failure to comply with Rule 65(d)'s requirement that an injunction "set forth adequate

restraining order," Haddad asserts that the Government's motion "is essentially a request for a preliminary injunction." *Id.* at 3. The Court disagrees.

To start, the Court notes that *Florida Medical Association* "involved an injunction going to the merits of the case in chief[,]" not an injunction to prevent frustration of a previously-issued order. *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985) (citing *Fla. Med. Assoc.*, 601 F.2d at 202). For this reason, multiple circuit courts have read *Florida Medical Association* as requiring strict compliance with Rule 65 only where the All Writs Act is used to issue a traditional preliminary injunction—that is, an injunction seeking to maintain the status quo. *See id.*; *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004) (citations omitted). The Court agrees with this reading and emphasizes the Fifth Circuit's commentary in *Florida Medical Association* stating that, in that case, Rule 65 "provide[d] sufficient protection for the jurisdiction of the district court." *Fla. Med. Assoc.*, 601 F.2d at 202. Viewed in this context, the Court does not read *Florida Medical*

---

reasons for its issuance." *Id.* 212–13.

Notwithstanding its broad language in *Scardelletti I*, the Fourth Circuit later clarified that some All Writs Act injunctions are "not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions." *Scardelletti v. Rinckwitz* ("*Scardelletti III*"), 68 F. App'x 472, 477 n.3 (4th Cir. 2003); *see Trull v. Dayco Prods., LLC*, 178 F. App'x 247, 251 (4th Cir. 2006) (distinguishing an injunction entered to "safeguard the sanctity of previous orders" from traditional preliminary injunctions). *See generally S.C. Coastal Conservation v. Ross*, 2019 WL 259116, at *2 (D.S.C. Jan. 18, 2019) ("[I]njunctions under the All Writs Act differ in important ways from injunctions issued under Rule 65 of the Federal Rules of Civil Procedure. Whereas injunctions under Rule 65 'are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case,' injunctions issued under the All Writs Act 'are needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it.' Based on this distinction, the Fourth Circuit has recognized that, when not issuing a preliminary injunction, All Writs Act injunctions are not governed by Rule 65.") (citations omitted)). As such, *Scardelletti I* stands at most for the limited proposition that All Writs Act injunctions must be specific and detailed enough to comply with Rule 65(d)'s requirements regarding the content of injunctions. This conclusion is buttressed by the fact that, since *Scardelletti I*, multiple district courts in the Fourth Circuit have issued or upheld restraining orders under the All Writs Act as necessary to give effect to previously-issued or imminent criminal restitution orders, and have done so without reference to Rule 65. *See United States v. Abdelhadi*, 327 F. Supp. 2d 587, 598–601 (E.D. Va. July 26, 2004); *United States v. Runnells*, 335 F. Supp. 2d 724, 725–26 (E.D. Va. 2004); *United States v. Sullivan*, 2010 WL 5437242, at *5–6 (E.D.N.C. Dec. 27, 2010).

*Association* as a general pronouncement that Rule 65's requirements apply to all injunctions issued under the All Writs Act.

Here, unlike in *Florida Medical Association*, the Government is not seeking a traditional preliminary injunction; rather, the Government seeks a restraining order to protect the Court's restitution order. Faced with similar circumstances, federal courts have found that the All Writs Act permits courts to issue restraining orders "to prevent [a] restitution debtor from frustrating collection of the restitution debt" and when doing so, need not "rigidly comply with Rule 65's prescriptions so long as the injunction is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *See Yielding*, 657 F.3d at 727 (quoting *In re Baldwin-United Corp.*, 770 F.2d at 338); *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012); *United States v. Simmons*, 2008 WL 336824, at *1 (E.D. Wisc. Feb. 5, 2008); *Abdelhadi*, 327 F. Supp. 2d at 598–601; *see also United States v. Cain*, 5:17-cr-381 (W.D. Tex. Jan. 24, 2019) (Doc. 562 at 8–9) (declining to dissolve a restraining order for failure to comply with Rule 65 where the injunction was sufficiently "specific and definite" (quoting *Yielding*, 657 F.3d at 727)). The Court finds this approach persuasive. Put simply, a post-judgment restraining order issued to prevent frustration of a restitution order is by no means preliminary and is not subject to the same requirements. *Cf. Trull*, 178 F. App'x at 251 (finding a district court's restraining order under the All Writs Act issued to prevent frustration of its prior order was not an inappropriate attempt to "use[] the All Writs Act to circumvent the requirements for preliminary injunctions contained in Rule 65"). Accordingly, the Court concludes that the Government need not comply with Rule 65 here so long as the eventual order is sufficiently

"specific and definite . . . to apprise those within its scope of the conduct that is being proscribed."[4] *See Yielding*, 657 F.3d at 727 (quoting *In re Baldwin-United Corp.*, 770 F.2d at 338).

B.      *The Government Has Shown Good Cause for Entry of a Restraining Order*

Having determined that *Florida Medical Association* does not mandate the Government's compliance with Rule 65 here, the Court now considers whether the Government has shown good cause for entry of a restraining order. In making this determination, the Court relies on the test set forth by the United States District Court for the Eastern District of Virginia in *Abdelhadi*. 327 F. Supp. 2d 587. The *Abdelhadi* court faced facts nearly identical to those currently before the Court. In that case, the defendant absconded and "was sentenced *in absentia* to . . . restitution payments . . . of $108,535.31." *Id.* at 591–92. The government sought a restraining order preventing the defendant from "transferring, selling, . . . or attempting or completing any action that would affect or diminish the marketability or value of [his] property subject to restitution," which the court granted. *Id.* at 592.

The district court later reviewed its decision to enter the restraining order. *Id.* at 592–93. After reviewing the relevant authorities, the court set forth the following test:

> [A] court may enter a restraining order if (i) by doing so, the court will give effect to a previously-issued order and (ii) there is reason to believe that the restraining order is necessary for payment of a fine or restitution.

*Id.* at 599 (citing *N.Y. Tel. Co.*, 434 U.S. at 172).

Finding "no doubt that both prongs of this two-pronged test were met," the court held that the restraining order was properly issued. *Id.* at 599–600. In doing so, it noted the various remedies

---

[4] This "specific and definite" language is derivative of Rule 65(d)'s requirements regarding the content and scope of injunctions and restraining orders. *Compare Yielding*, 657 F.3d at 727 (quoting *In re Baldwin-United Corp.*, 770 F.2d at 338), *with* Fed. R. Civ. P. 65(d).

through which the government could enforce the court's restitution order but emphasized that "none [could] be instantly implemented, and none ensure[d] that, in the interim, [the] defendant's assets [would] not be secreted, wasted or placed beyond the reach of the victim or the government." *Id.* at 601.

Here, the Court adopts the *Abdelhadi* test and finds that it is clearly satisfied. The documents submitted by the Government show that Haddad and her husband—contrary to the expectation of Haddad's counsel—sold their home and immediately transferred the proceeds to an offshore account in Haddad's husband's name despite having notice of the Government's lien against her property. Doc. 157-2, Lien Not.; Doc. 157-3, Counsel Emails; Doc. 157-4, Wire Confirmation. This and Haddad's "flight and unknown whereabouts suggest[] a reasonable likelihood that [Haddad] would (i) fail to pay restitution and/or (ii) make efforts to transfer, sell, or dispose of assets" for her or her family's benefit. *See Abdelhadi*, 327 F. Supp. 2d at 600. And like in *Abdelhadi*, the government lacks a sufficient remedy to ensure preservation of Haddad's property for payment of restitution. *See id.* at 601. Moreover, Haddad's counsel was provided notice of the Government's motion and Haddad was provided ample opportunity to respond.[5] For these reasons, and because the Court finds that the Government's proposed restraining order is sufficiently "specific and definite . . . to apprise those within its scope of the conduct that is being proscribed," *Yielding*, 657 F.3d at 727, the Court concludes that the Government's motion should be granted.

---

[5] The Court rejects the proposition that it cannot grant the government's motion because "[n]o notice has been given to Haddad or her husband." Doc. 164, Def.'s Resp., 3. Haddad cannot disrupt the Court's power to issue a restraining order preventing frustration of its restitution order by absconding and failing to communicate with her counsel.

"Of course, an application to modify or vacate the restraining order may be filed by an appropriate party should circumstances exist or arise in the future indicating good cause to do so." *Abdelhadi*, 327 F. Supp. 2d at 601.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds a restraining order is appropriate and therefore **GRANTS** the Government's Motion for Restraining Order (Doc. 157). Therefore, the Court **ORDERS** the following:

Blanca Haddad, Ibrahim Haddad a/k/a Abe Haddad, and Blanca Haddad's representatives, agents, attorneys, associates, nominees, alter egos (companies), family members, and/or assigns shall not:

- Directly or indirectly alienate, dissipate, transfer, sell, assign, lease, pledge, encumber, dispose, or move any of Blanca Haddad's real property, personal property, and/or rights to property, whether held in her name, in the name of her spouse, Ibrahim Haddad a/k/a Abe Haddad, and/or in the name of any alter ego business, without prior approval of this Court, including but not limited to withdrawing funds from retirement or bank accounts and/or selling or encumbering any real property;

- Take, or cause to be taken, any action which could have the effect of concealing or moving property from the jurisdiction of this Court; or

- Take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of any property

whether held in her name, in in the name of her spouse, Ibrahim Haddad a/k/a Abe Haddad, and/or in the name of any alter ego business, except for payment of normal monthly living expenses from already liquid accounts.

This Order shall remain in full force and effect until Blanca Haddad has satisfied the restitution obligation ordered by this Court or until further order of this Court.

**SO ORDERED**.

**SIGNED: February 4, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE